1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA
10
MARJORIE ROKER,                    )
11                 Plaintiff,       )   Case No. CV 05-4539 (OP)
                                    )
12        vs.                       )
                                    )   MEMORANDUM OPINION; ORDER
13  JO ANNE B. BARNHART,            )
    Commissioner of Social Security,)
14                                  )
                                    )
15              Defendant.          )
                                    )
16  _____ )

17                      **I.**
18                 **INTRODUCTION**
19        On June 23, 2005, Plaintiff Marjorie Roker ("Plaintiff"), filed a Complaint
20   seeking review of the Commissioner's denial of her application for Supplemental
21   Security Income ("SSI") benefits.  On June 15, 2006, in accordance with the
22   Court's Case Management Order, the parties filed a Joint Stipulation ("JS").
23   Thus, this matter now is ready for decision.
24                      **II.**
25                 **BACKGROUND**
26        On March 8, 2002, Plaintiff filed an application for SSI (Administrative
27   Record ("AR") at 78-96), alleging inability to work due to multiple sclerosis, lost
28   eye sight, and "problem with nerves."  (AR at 91.)  Following the denial of her

application, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR at 33.)  On April 1, 2004, a hearing was held (AR at 12), and on January 11, 2005, the ALJ issued his decision.  (AR at 12-19.)

As reflected in the hearing decision, the ALJ found that Plaintiff suffered from medically determinable impairments (i.e., lumbar disc bulges, right lower extremity weakness, and depression) which in combination were "severe."  (AR at 18.)  However, the ALJ further found that: i) Plaintiff's impairments did not, singly or in combination, meet or medically equal the criteria of any of the impairments listed in Appendix 1, Subpart P of the Commissioner's regulations ("Listing of Impairments" or "Listing"); ii) Plaintiff's statements concerning her impairments and their impact on her ability to work were not entirely credible; and iii) Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of medium work.  (AR at 18.)  The vocational expert ("VE") testified that Plaintiff was capable of performing medium work as a hand packager or as an assembly worker.  (Id.)  The ALJ concluded that Plaintiff had not been under a disability as defined in the Social Security Act at any time through the date of the ALJ's decision and, therefore, was not eligible for SSI. (AR  at 18-19.)

Plaintiff filed a request with the Appeals Council for review of the ALJ's decision.  On May 7, 2005, that request was denied.  (AR at 5-12.)  As a result, the ALJ's decision stands as the final decision of the Commissioner in Plaintiff's case.  The timely filing of the current action followed.

### III.

### DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues which Plaintiff is raising as the grounds for reversal and/or remand are as follows:

1.    Whether the ALJ propounded a complete hypothetical to the Vocational Expert ("VE"); and

1    2.    Whether the ALJ properly considered the medical evidence.

2  (JS at 4.)

3                                      **IV.**

4                          **STANDARD OF REVIEW**

5       Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision

6  to determine whether the Commissioner's findings are supported by substantial

7  evidence and whether the proper legal standards were applied.  <u>DeLorme v.</u>

8  <u>Sullivan</u>, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more

9  than a mere scintilla" but less than a preponderance.  <u>Richardson v. Perales</u>, 402

10 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); <u>Desrosiers v. Secretary of</u>

11 <u>Health & Human Servs.</u>, 846 F.2d 573, 575-76 (9th Cir. 1988).  Substantial

12 evidence is "such relevant evidence as a reasonable mind might accept as

13 adequate to support a conclusion." <u>Richardson</u>, 402 U.S. at 401.  The Court must

14 review the record as a whole and consider adverse as well as supporting evidence.

15 <u>Green v. Heckler</u>, 803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is

16 susceptible of more than one rational interpretation, the Commissioner's decision

17 must be upheld.  <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1453 (9th Cir. 1984).

18

19                                      **V.**

20                            **DISCUSSION**

21 **A.    The ALJ's Hypothetical to the VE Was Not Incomplete**

22      Plaintiff contends the ALJ erred by not including limitations imposed by

23 Plaintiff's mental conditions in his hypothetical to the VE.[1]  (JS at 8.)

24  _____

25      [1] Plaintiff argues that, because the ALJ determined Plaintiff's depression

26 was "severe," by definition that condition imposes a significant work-related

27 limitation.  (JS at 6.)  However, at this step of the analysis, step two, the analysis

28 is "'a de minimis screening device to dispose of groundless claims.'"  <u>Smolen v.</u>

                                                              (continued...)

                                        3

Specifically, Plaintiff claims the ALJ should have included the fact that Plaintiff would be absent from work more than two times a month due to her mental impairments. (JS at 8.) Plaintiff's counsel, however, did ask the VE to opine on the ability to perform medium work if the hypothetical worker was absent from work more than two times a month. (AR at 312.) The VE responded that such unscheduled absences would prevent the ability to perform occupations at the medium level. (Id.)

In this case, the contention that Plaintiff would be absent from work more than three days a month was opined to by her treating psychiatrist, Robert Lindstrom, D.O., in his responses to a "Mental Impairment Questionnaire." (AR at 15, 242.) Plaintiff's contention that these absences would be "unscheduled" or "due to her severe mental impairments" (JS at 7), misstates the record. This form asked for estimated absences from work due to the "patient's impairments or treatment." (AR at 242 (emphasis added).) Also, at the time Dr. Lindstrom filled out the form, Plaintiff was attending "weekly sessions to work on coping and rehabilitation techniques." (AR at 240.) As a result, whether the absences would be due to her impairment rather than to regularly scheduled attendance at treatment sessions for her impairment is ambiguous at best. More importantly, Dr. Lindstrom also noted that Plaintiff was taking Prozac to treat her depression

---

[1](...continued)

Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing Bowen v. Yuckert, 482 U.S. 137, 153-54, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987)). A finding of "severe" impairment does not equate with a finding of "disabled" unless, at the next step of the analysis the ALJ finds the claimant's severe impairments are so significant that a presumption of disability is appropriate, i.e., claimant's impairments meet or equal a Listing. If they do not meet or equal a Listing, then the ALJ must determine whether the claimant can return to his previous work or if other jobs are available to the claimant. Thus, although an impairment may be "severe," a plaintiff may not be totally disabled under the Social Security laws.

with no side effects, her prognosis was good, she would not have difficulty working at a regular job on a sustained basis, and her degree of functional limitation as a result of her mental impairment was slight.  (AR at 242, 243.)

Likewise, the psychological evaluation done by Dr. Kopoian of the Department of Social Services found that Plaintiff might have difficulty performing a variety of detailed and complex tasks because of <u>pain</u> but that she could perform such tasks with modification.  (AR at 211.)  With regard to her mental state, Dr. Kopoian found that Plaintiff could interact appropriately with authority figures and peers so long as she was given limited, low stress tasks.  (AR at 211, 213.)  Her mental state affected only "slightly" her ability to interact appropriately with the public and to respond appropriately to work pressures and changes in routine.  (AR at 213.)   Dr. Kopoian also concluded that Plaintiff's mental impairment did not interfere with her ability to understand, remember, and carry out instructions.  (Ar at 211.)

Hypothetical questions posed to a vocational expert need not include all alleged limitations, but rather only those limitations which the ALJ finds to exist.  <u>See, e.g.</u>, <u>Magallanes v. Bowen</u>, 881 F.2d 747, 756-57 (9th Cir. 1989); <u>Copeland v. Bowen</u>, 861 F.2d 536, 540 (9th Cir. 1988); <u>Martinez v. Heckler</u>, 807 F.2d 771, 773-74 (9th Cir. 1986).  Thus, an ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations.  <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (<u>citing</u> <u>Roberts v. Shalala</u>, 66 F.3d 179, 184 (9th Cir. 1995); <u>see also</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995) (although the hypothetical may be based on evidence which is disputed, the assumptions in the hypothetical must be supported by the record).

Based on the evidence in the record, there was no error in the ALJ's finding that Plaintiff's depression had a minimal impact on her mental residual functional capacity.  Consequently, there was no error in the ALJ's hypothetical questions to

the VE which did not include limitations imposed by Plaintiff's mental condition.
Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("Because the ALJ
included all of the limitations that he found to exist, and because his findings
were supported by substantial evidence, the ALJ did not err in omitting the other
limitations that Rollins had claimed, but had failed to prove.").

**B.**     **The ALJ Properly Considered the Examining Physician's Opinion**

Plaintiff contends that the ALJ's RFC analysis is invalid because it differs
from the opinion of the examining physician, Dr. Robert Moore, without an
adequately articulated rationale.  Specifically, Plaintiff claims the ALJ ignored
Dr. Moore's finding that Plaintiff can "sometimes walk only four hours in an
eight hour day." (JS at 11.)  Plaintiff contends that the ALJ parceled out the
record rather than view it as a whole.  (JS at 13.)  However, the record as a whole
does not suggest that Plaintiff can stand or walk only for four hours.

Dr. Moore's April 10, 2002, opinion was that Plaintiff was able to "stand
and walk four to six hours out of an eight-hour day" (AR at 14, 132 (emphasis
added)), not just four hours as Plaintiff implies.  Dr. Moore also found that,
although Plaintiff described her right leg as weak when compared to her left leg,
she was ambulating without assistance, had a "minor" tendency to drag her right
leg when walking, had some difficulty balancing on her heels and toes because of
poor balance, and her tandem gait was mildly impaired with a tendency to fall to
the right.  (AR at 131.)  Dr. Moore further found that Plaintiff could sit in an
unrestricted manner, occasionally bend and stoop, could not climb, balance, or
work at heights, and could intermittently lift and carry 40 pounds, and more
frequently lift and carry 20 pounds.  (AR at 132.)

In June 2002, Dr. Moore was asked to compare his April 10, 2002,
functional assessment with an apparent change he had made in his assessment
after discussing the case with another DDS physician.  (AR at 133.)  As a result of
that discussion, Dr. Moore clarified that the previously noted gait abnormality

was not "typical for anything" and that the limitation imposed was based on the gait observed.  (AR at 134.)  He now believed that Plaintiff should be limited to lifting carrying 50/25 pounds and that any limitations due to the balance impairment (based on the tandem gait impairment) could be omitted.  (Id.)  This "clarification" is ambiguous as to whether this change in assessment also affected Dr. Moore's opinion that Plaintiff could stand or walk for four to six hours in an eight-hour day as well as his climbing/balancing restriction.  As a result, it was for the ALJ to interpret the evidence to resolve the ambiguity in that report. Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("In making a determination of disability, the ALJ must develop the record and interpret the medical evidence"); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (the ALJ is responsible for resolving ambiguities in the evidence).

Even assuming Dr. Moore's opinion on Plaintiff's restrictions on standing and walking did not change, the record still supports the ALJ's findings that Plaintiff was capable of performing medium work.[2]  The VE opined that, if an individual's walking and standing was restricted to four hours, then medium work would be inappropriate.[3]  (AR at 311.)  Dr. Moore's opinion, even assuming

_____

[2]  Although Plaintiff's chiropractor opined that she would be unable to perform her regular work indefinitely, the ALJ properly discounted this source since chiropractors are not considered an "acceptable medical source" in the Regulations.  (AR at 16.)  Likewise, the ALJ properly rejected the opinion of Dr. Chen, who gave Plaintiff a very restrictive RFC assessment without having determined the etiology of Plaintiff's pain and after considering only Plaintiff's subjective allegations.  (Id.)

[3]  This Court is unable to find any authority to support this contention of the VE.  Regardless, the ALJ did not find evidence in the record to support that Plaintiff could walk or stand for only four hours out of an eight-hour day.  Thus, the VE's testimony that "four hours is going to cause a problem" because it fell

(continued...)

7

Plaintiff's standing/walking restriction remains after his clarification of his opinion, did not restrict walking and standing to only four hours in an eight-hour work day – it provided a range up to six hours.[4]  The VE opined that for an individual who could stand or walk six hours in a day, the number of available medium occupations would be cut by 20%.  There was still medium work existing in significant numbers even with the 20% reduction for this restriction.

Accordingly, the ALJ's assessment that Plaintiff retained the RFC to perform medium work and that medium work existed sufficient to support a finding of "not disabled," was supported by the evidence and was not inconsistent with Dr. Moore's findings, nor did it ignore or reject those findings.

## VI.

## ORDER

IT IS HEREBY  ORDERED THAT Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: March 7, 2007

HONORABLE OSWALD PARADA
United States Magistrate Judge

---

[3](...continued)
below the "medium" guidelines (AR at 310-11) was of no consequence.

[4]  Plaintiff is an individual closely approaching retirement age, who completed high school and two years of college, and had no past work experience.  The ALJ determined Plaintiff had a medium RFC.  (AR at 17, 18.) Based on that background, the Medical-Vocational Guidelines indicate that such a person would not be found disabled.  20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 203.06 & 203.07.